Todd. A. Seaver (SBN 271067)
Kristin J. Moody (SBN 206326)
A. Chowning Poppler (SBN 272870)
**BERMAN DEVALERIO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 433-3200
Fax: (415) 433-6282
Email: tseaver@bermandevalerio.com
       kmoody@bermandevalerio.com
       cpoppler@bermandevalerio.com

Daniel E. Gustafson (*Pro Hac Vice forthcoming*)
Daniel C. Hedlund (*Pro Hac Vice forthcoming*)
Joshua J. Rissman (*Pro Hac Vice forthcoming*)
Kaitlyn L. Dennis (*Pro Hac Vice forthcoming*)
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
Email: dgustafson@gustafsongluek.com
       dhedlund@gustafsongluek.com
       jrissman@gustafsongluek.com
       kdennis@gustafsongluek.com

*Counsel for Plaintiff and the Proposed Classes*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NATHAN FRIEDENFELS, on behalf of himself and all others similarly situated, | Civil Case No.: 3:17-cv-1605 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **CLASS ACTION** |
| FCA US LLC, and FIAT CHRYSLER AUTOMOBILES N.V., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Nathan Friedenfels ("Plaintiff"), on behalf of himself and all others similarly situated, for his Complaint against Defendants, FCA US LLC and Fiat Chrysler Automobiles N.V. (together, "FCA" or "Defendants"), alleges the following upon information and belief and investigation of counsel, except for those allegations that pertain to Plaintiff, which are based on his personal knowledge:

## I.     INTRODUCTION

1.     This is a nationwide class action relating to FCA's design and implementation of deceptive "defeat device" software on over 100,000 Dodge and Jeep EcoDiesel vehicles ("EcoDiesel Vehicles"). The EcoDiesel Vehicles were marketed as having low emissions, high gas mileage, and excellent on-road performance. In reality, these vehicles put out nitrous oxide emissions at levels significantly higher than allowed by federal and state law.

2.     The "EcoDiesel Vehicles" referred to in this complaint include Dodge and Jeep vehicles sold in the United States equipped with 3.0 liter EcoDiesel engines. These vehicles (A) produce high levels of nitrous oxide (NOx) pollutants under normal operating conditions; (B) are equipped with AECD software designed to bypass emissions regulations; and (C) cannot deliver the advertised combination of low emissions, fuel economy, and high performance for which they were advertised. The vehicles equipped with the 3.0L EcoDiesel engine include the following makes and models:

| Model Year | Make and Model | 50 State Volume |
| --- | --- | --- |
| 2014 | FCA Dodge Ram 1500 | 14,083 |
| 2014 | FCA Jeep Grand Cherokee | 14,652 |
| 2015 | FCA Dodge Ram 1500 | 31,984 |
| 2015 | FCA Jeep Grand Cherokee | 8,421 |
| 2016 | FCA Dodge Ram 1500 | 32,219 (projected) |
| 2016 | FCA Jeep Grand Cherokee | 2,469 (projected) |

## II.    JURISDICTION

3.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Defendants are citizens of different jurisdictions from members of the proposed class, including Plaintiff.  Subject-matter jurisdiction also arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq.*

4.     This Court has personal jurisdiction over Defendants because they have minimum contacts with the United States, this judicial district, and this State, and intentionally availed themselves of the laws of the United States and this state by conducting a substantial amount of business throughout the state, including the design, manufacture, distribution, testing, sale, lease, and/or warranty of EcoDiesel Vehicles in this State and District. At least in part because of Defendants' misconduct as alleged in this lawsuit, EcoDiesel Vehicles ended up on this state's roads and in dozens of franchise dealerships. This Court has specific jurisdiction over FCA because both have purposefully availed themselves of this forum by directing their agents and distributors to take action here. FCA closely directed the actions of its agents in advertising and selling the cars FCA manufactures in the United States.

## III.    INTRADISTRICT ASSIGNMENT

5.     Pursuant to Civil L.R. 3-5(b), intradistrict assignment in San Francisco is proper because a substantial part of the misconduct which gave rise to the claims occurred in the counties served by the San Francisco Division. Several proposed Class Members, defined *infra*, purchased and maintained their EcoDiesel Vehicles in the counties served by this Division. Moreover, FCA conducts substantial business in the counties served by this Division and has marketed, advertised, and sold/leased the EcoDiesel Vehicles in those counties, and has caused harm to Class Members residing in those counties.

## IV.    VENUE

6.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. FCA

conducts substantial business in this District, including marketing, advertising, selling, and leasing EcoDiesel Vehicles, and has caused harm to thousands of Class Members in this District. Relevant documents and witnesses may be found in this District and throughout California, given California Air Resources Board's ("CARB") in uncovering Defendants' use of defeat devices on its diesel engines and issuing a Notice of Violation.

## V.    PARTIES

### A.    Plaintiff

7.    Plaintiff Nathan Friedenfels is a resident of Holmen, Wisconsin. On January 24, 2015, Plaintiff purchased a 2015 Ram 1500 Limited EcoDiesel Vehicle from Ubersox Chrysler in Platteville, Wisconsin. Before purchasing his vehicle, Plaintiff researched the vehicle and its traits. Plaintiff was induced to purchase the vehicle after learning about the EcoDiesel Vehicle's fuel efficiency and performance, as well as the vehicle's reputation for maintaining a high resale value.

### B.    Defendants

8.    Defendant FCA US LLC is a limited liability company organized under the laws of the State of Delaware, and is wholly owned by Defendant holding company Fiat Chrysler Automobiles N.V., a Dutch corporation headquartered in London, United Kingdom. Both FCA's principal place of business and headquarters are located in Auburn Hills, Michigan. The American family of FCA brands include Chrysler, Dodge, Jeep, and Ram, among others.  FCA conducts substantial business in this District and throughout the United States.

9.    Within the United States, FCA manufactures, distributes, and sells motor vehicles, including the EcoDiesel Vehicles, as well as selling parts through its franchised dealers. FCA is engaged in interstate commerce through its national network, selling vehicles and distributing other materials in all fifty states.

## VI.   FACTS

### A.   EcoDiesel Introduction and Marketing

10.   Beginning with the 2014 model year, FCA began the sale of two models of vehicles equipped with 3.0L "EcoDiesel" engines: the Jeep Grand Cherokee "EcoDiesel," and the Dodge RAM 1500 "EcoDiesel."

11.   Before any vehicle is permitted to enter commerce within the United States, manufacturers are required obtain a certificate of conformity, or "COC," from the EPA. The COC indicates that the vehicle meets the applicable emissions standards administered by the EPA, including the standards for maximum levels of NOx emissions. 40 C.F.R. § 86.1811-04; 42 U.S.C. § 7401(b)(1)-(2). FCA obtained COCs for the EcoDiesel Vehicles from the EPA, and these vehicles were then introduced into the American market.

12.   In an aggressive marketing campaign targeted at consumers who "want[ed] to drive [] efficient, environmentally-friendly" vehicles,[1] the EcoDiesel Vehicles were advertised as "ultra clean," with excellent fuel economy and exceptional torque and towing capacity. FCA advertised that the EcoDiesel Vehicles' "emissions control system helps ensure that virtually no particulates and minimal [NOx] exit the tailpipe." The Ram 1500 EcoDiesel was touted as "the NAFTA market's first and only light-duty pickup powered by clean diesel technology."[2]

13.   FCA repeatedly emphasized the vehicles' compliance with state and federal emissions standards in its advertising, stating:

---

[1] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013), https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at-a-dealer-near-you/.

[2] *Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014*, Chrysler Group LLC (FCA) (Dec. 12, 2013), http://www.prnewswire.com/news-releases/chrysler-groups-30-liter-ecodiesel-v-6-500e-battery-electric-drive-system-among-wards-10-best-engines-for-2014-235575231.html.

- "Thanks to advanced emissions-control technology … the [EcoDiesel Vehicles'] exhaust is ultraclean, making this engine available in all 50 states."[3]
- "Equipped with a diesel oxidation catalyst, diesel particulate filter and selective catalyst reduction, the EcoDiesel V-6 engine will be emissions-compliant in all 50 states."[4]
- "Chrysler Group engineers adapted the engine—manufactured by Fiat-owned V.M. Motori—to meet the NAFTA region's stringent emissions and on-board diagnostic regulations. The new EcoDiesel V-6 is Tier 2/Bin 5 compliant."[5]

14.    FCA accepted several awards for its supposedly environmentally-friendly EcoDiesel Vehicles. FCA's website claims that "[t]he 3.0-liter V-6 EcoDiesel engine available on the Jeep Grand Cherokee and Ram 1500 pickup has been listed among Ward's "10 Best Engines" for three consecutive years.[6]

15.    FCA heavily advertised the EcoDiesel Vehicles' fuel economy, asserting that the 2014 Ram 1500 "exceeds the EPA highway rating for the top-ranked small pickup. The breakthrough results mean Ram keeps the half-ton fuel-economy record set last year by the 2013 Ram 1500."[7] FCA's website claims that Ram 1500 has the "best fuel economy of any full-size pick-up:"[8] The Jeep Grand Cherokee EcoDiesel Vehicles' advertising is similarly deceptive.

---

[3] *Id.*

[4] *Supra* note 1.

[5] *Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014*, Chrysler Group LLC (FCA) (Dec. 12, 2013), http://www.fcanorthamerica.com/News/ChryslerDocuments/ChryslerGroupLLC_Sustain2013Dec12.pdf.

[6] *Fuel Efficiency*, FCA US LLC, http://www.fcanorthamerica.com/Innovation/Pages/FuelEfficiency2.aspx.

[7] *2014 Ram 1500 EcoDiesel Orders Top More Than 8,000 Units in Three Days, Filling Initial Allocation*, PR Newswire, http://www.prnewswire.com/news-releases/2014-ram-1500-ecodiesel-orders-top-more-than-8000-units-in-three-days-filling-initial-allocation-246143751.html.

[8] *EcoDiesel – Ram 1500 HFE,* Ram Trucks (FCA), http://www.ramtrucks.com/en/ecodiesel/#

FCA asserted that the EcoDiesel Vehicles' fuel efficiency equips the Jeep Grand Cherokee "with an incredible 730-mile highway driving range."[9]

16.    FCA charged higher prices for its EcoDiesel Vehicles compared to the gasoline versions of the same model. Both the EcoDiesel-equipped versions of the Dodge RAM 1500 and the Jeep Grand Cherokee cost roughly $4,500 more than the same vehicle with a gasoline engine.

**B.    EPA'S NOV Letter**

17.    On January 12, 2017, the EPA issued a Notice of Violation ("NOV") to FCA following an investigation of FCA's EcoDiesel-equipped vehicles. The EPA determined that each time FCA sold one of these vehicles, or offered it for sale, it violated the Clean Air Act ("CAA") because the vehicles contained several undisclosed Auxiliary Emission Control Devices, or AECDs.

18.    An AECD is "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system."  40 C.F.R. § 86.1803-01. Manufacturers are obligated to disclose all AECDs to the EPA as part of the process of obtaining a COC, and must provide detailed justification for why any existing AECDs are necessary for the safe and effective operation of the vehicle. Absent proper justification, AECDs are considered "defeat devices." 40 CFR § 86.1803-01.

19.    The EPA uncovered and identified eight previously undisclosed AECDs used in the software of the EcoDiesel Vehicles. The AECDs altered the functioning of the EcoDiesel Vehicles' emission control system, undermining the results of traditional federal and state emissions testing procedures and causing the emissions produced to be far higher than the allowable limits. These AECDs were never previously acknowledged or disclosed by FCA, either to customers or to the regulatory agencies.

20.    The AECDs identified in the EPA's NOV include the following:

    •    AECD #1 – Full EGR (Exhaust Gas Recirculation) Shut-Off at Highway Speed

---

[9] *EcoDiesel*, Jeep (FCA), http://www.jeep.com/en/jeep-capabilities/eco-diesel-calculator/#range.

- • AECD #2 – Reduced EGR with Increasing Vehicle Speed
- • AECD #3 – EGR Shut-Off for Exhaust Valve Cleaning
- • AECD #4 – DEF (Diesel Exhaust Fluid) Dosing Disablement During SCR (Selective Catalytic Reduction) Adaptation
- • AECD #5 – EGR Reduction due to Modeled Engine Temperature
- • AECD #6 – SCR Catalyst Warm-Up Disablement
- • AECD #7 – Alternative SCR Dosing Modes
- • AECD #8 – Use of Load Governor to Delay Ammonia Refill of SCR Catalyst

21.     Testing by National Vehicle and Fuel Emissions Laboratory ("NVFEL") revealed that the EcoDiesel Vehicles were emitting excessive amounts of NOx in conditions reasonably expected to be encountered in normal vehicle operation and use as a result of the AECDs functioning together to diminish the effectiveness of the emission control system of the vehicle.

22.     Per the EPA's NOV letter, FCA has failed to demonstrate that FCA did not know, or should not have known, that the "principal effect of the use of one or more of these AECDs was to bypass, defeat, or render inoperative one or more elements of design installed to comply with emissions standards under the [Clean Air Act]."

23.     Because of FCA's failure to provide adequate, legally-recognized justifications for the use of the AECDs uncovered and investigated by the EPA, the AECDs constitute illegal defeat devices under the terms of the CAA.

24.     Without cheating the emissions testing process, the EcoDiesel Vehicles cannot achieve the fuel economy and range FCA repeatedly promised through its advertising. When and if FCA recalls the EcoDiesel Vehicles and degrades the engine performance to comply with EPA standards, Plaintiff and Class Members will have to spend extra money on fuel and will not have a vehicle that lives up to high performance standards FCA advertised. The EcoDiesel Vehicles will necessarily lose value in the marketplace because of this decrease in performance and efficiency.

**VII.   CLASS ACTION ALLEGATIONS**

25.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

26.     The named Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

27.     Plaintiff seeks to represent the following Classes, defined *infra*:

**Nationwide Class**

All current and former owners or lessees of new or used EcoDiesel Vehicles that were purchased or leased in the United States or its territories.

**Wisconsin Subclass**

All current and former owners or lessees of new or used EcoDiesel Vehicles that were purchased or leased in Wisconsin.

28.     Excluded from the Nationwide Class and Wisconsin Subclass ("the Classes") are: (A) FCA, any entity or division in which FCA has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (B) the Judge to whom this case is assigned and the Judge's staff; (C) governmental entities; and (D) those persons who have suffered personal injury as a result of the facts alleged herein. Plaintiff reserves the right to amend the class definitions if discovery and further investigation reveal that any class should be expanded, divided into additional subclasses, or modified in any other way.

29.     Numerosity and Ascertainability.  Plaintiff does not know the exact size of the Classes or the identities of the members of the Classes ("Class Members") since such information is the exclusive control of FCA. Plaintiff believes that the Classes encompasses approximately 100,000 individuals who are geographically dispersed throughout the United States. The number of members in the Classes are so numerous that joinder of all Class Members is impracticable.

30.     Commonality and Predominance. The action involves common questions of law and fact, under Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3), which predominate over any question solely affecting individual Class Members, including, without limitation:

a.     Whether FCA engaged in the conduct as alleged in this complaint;

b.     Whether FCA designed, marketed, advertised, distributed, sold, leased, or otherwise placed EcoDiesel Vehicles into the stream of commerce in the United States;

c.     Whether the EcoDiesel Vehicle engine system contains AECDs designed to circumvent federal and state emissions requirements;

d.     Whether the EcoDiesel Vehicle engine systems can be made to comply with emissions standards without degrading the performance or gas mileage of the vehicles;

e.     Whether FCA designed, marketed, advertised, distributed, sold, and/or leased affected vehicles with a "defeat device."

f.     Whether FCA knew about the "defeat device," and if so, for how long FCA knew about the "defeat device";

g.     Whether FCA's conduct violated consumer protection statutes, warranty laws, and other law as asserted herein;

h.     Whether Plaintiff and Class Members overpaid for their EcoDiesel Vehicles;

i.     Whether Plaintiff and Class Members have suffered a diminution of value of their EcoDiesel Vehicles;

j.     Whether Plaintiff and Class Members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

k.     Whether Plaintiff and Class Members are entitled to damages and other monetary relief and, if so, in what amount.

31.     Typicality. In accordance with Federal Rule of Civil Procedure 23(a)(3), Plaintiff's claims are typical of the other Class Members' claims because all Class Members were comparably injured through FCA's wrongful conduct as described above.

32.     Adequacy. Pursuant to Federal Rule of Civil Procedure 23(a)(4), Plaintiff is an adequate class representative because his interest does not conflict with the interests of the other

members of the Classes he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interest will be fairly and adequately protected by Plaintiff and his counsel.

33.     Superiority. Under Federal Rule of Civil Procedure 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for the members of the Classes to individually seek redress for FCA's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.   TOLLING OF THE STATUTE OF LIMITATIONS

34.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.  Plaintiff could not have discovered through reasonable diligence that his EcoDiesel Vehicle was defective until shortly before this action was filed.

### A.     Fraudulent Concealment

35.     FCA concealed its fraud from the Classes. Upon information and belief, FCA knew of the defeat devices installed in the EcoDiesel Vehicles since at least 2014, and intentionally concealed from or failed to notify Plaintiff, Class Members, and the government of the defeat devices and the true emissions and performance of the EcoDiesel Vehicles.

36.     The defeat device is a complicated software algorithm designed only to detect emissions testing conditions in order to selectively initiate the full emissions controls and track

1  the emissions test. The defeat device could only have been installed intentionally by FCA, and

2  the only purpose of the software is to deceive regulators, consumers, and the public.

3      37.    Despite its knowledge of the AECDs and unlawful level of emissions, FCA failed

4  to come forward to the public or regulators to make necessary disclosures.

5      38.    Any applicable statute of limitation has therefore been tolled by FCA's

6  knowledge and active concealment of the facts alleged therein.

7      **B.    Estoppel**

8      39.    FCA failed in its duty to disclose to Plaintiff and Class Members, and in fact

9  actively concealed, the true character, quality, and nature of the EcoDiesel Vehicles. FCA

10  knowingly misrepresented the quality, reliability, characteristics, and performance of the

11  vehicles. Plaintiff, along with Class Members, reasonably relied on FCA's misrepresentations.

12  Based on the foregoing, FCA is estopped from relying on any statutes of limitation in defense of

13  this action.

14      **C.    Discovery Rule**

15      40.    The causes of action alleged herein did not accrue until Plaintiff and Class

16  Members discovered that the EcoDiesel Vehicles employed undisclosed AECDs/defeat devices.

17      41.    Plaintiff and Class Members had no realistic ability to discover the presence of

18  the defeat devices, or otherwise learn of the fraud, until it was uncovered to the public through

19  the EPA's January 12, 2017 Notice of Violation.

20  **IX.    CLAIMS FOR RELIEF**

21              **FIRST CLAIM FOR RELIEF**
22      **Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.**
                **(On Behalf of the Nationwide Class)**

23      42.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as

24  though fully set forth herein.

25      43.    Plaintiff brings this claim individually and on behalf of the Nationwide Class

26  under the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301 et seq.

27      44.    The EcoDiesel Vehicles are consumer products under the definitions of 15 U.S.C.

28  § 2301(1).

45.    Plaintiff, along with other members of the Nationwide Class, is a "consumer" who purchased a "consumer product" for personal, family, or household purposes under the meaning of 15 U.S.C. §§ 2301(1) and (3).

46.    FCA is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)-(5) because the company sells vehicles accompanied by written Limited Warranties.

47.    FCA provided Plaintiff and members of the Nationwide Class with several warranties, which included: (a) a 5-year/100,000-mile Diesel Powertrain Limited Warranty covering "the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation"; (b) a California Emissions Standard Warranty for 3 years or 50,000 miles (whichever occurs first); (c) a California Emissions Standard Warranty for 7 years or 70,000 miles (whichever occurs first); and (d) a federal emissions warranty covering the repair and replacement of all emissions control and emissions-related parts for two years or 24,000 miles (whichever comes first), covering specified major emission control components for 8 years or 80,000 miles (whichever comes first). These warranties are express written warranties under the meaning of 15 U.S.C. § 2301(6).

48.    Under 15 U.S.C. § 2310(d)(1), any consumer who is damaged by the failure of a warrantor to comply with the warrantor's written or implied warranty has a private cause of action.

49.    The terms of written warranties provided a basis for Plaintiff's and Nationwide Class members' decisions to purchase EcoDiesel Vehicles.

50.    The EcoDiesel Vehicles are uniformly defective under the terms of FCA's written warranties, as described in detail above, in that the vehicles' emissions were far higher than allowable under federal and state regulations, and that the vehicles were nevertheless held out by FCA to the public, customers, and regulators to be within the allowable limits.

51.    The amount in controversy of Plaintiff's individual claims meets or exceeds $25 in value. The amount in controversy also meets or exceeds $50,000 in value, exclusive of interest and costs, on the basis of all claims to be determined in this suit.

52.     As a direct and proximate result of FCA's violation of its written warranties, as well as the implied warranty of merchantability, Plaintiff and members of the Nationwide Class suffered damages in an amount to be determined at trial.

53.     Plaintiff, individually and also on behalf of members of the Nationwide Class, seeks all damages permitted by law, including compensation for the difference between the defective EcoDiesel Vehicles as warranted and sold, compensation for decreased resale value, the cost of acquiring a replacement vehicle, and all other incidental and consequential damages, statutory attorneys' fees and other relief as permitted by law.

**SECOND CLAIM FOR RELIEF**
**Common Law Fraud**
**(On Behalf of the Nationwide Class)**

54.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

55.     Plaintiff brings this claim on behalf of himself and the Nationwide Class.

56.     FCA engaged in both fraudulent misrepresentation and fraud by omission, and in fraud by concealment. As described above, FCA misled Plaintiff and members of the Nationwide Class and induced their purchases by marketing the EcoDiesel Vehicles as putting out low emissions while maintaining high performance and excellent fuel economy.

57.     These intentional and material misrepresentations included advertisements and marketing material that claimed the EcoDiesel Vehicles (a) were eco-friendly and (b) combined low emissions with high performance and strong fuel economy.

58.     The foregoing misrepresentations were uniform across all members of the Nationwide Class. The materials distributed to the public contained standardized statements related to the EcoDiesel Vehicles' environmental friendliness, performance, and fuel economy.

59.     Through the EPA's testing, the EcoDiesel engine's emissions were found to be far higher than disclosed to either consumers or the regulatory agencies. FCA intentionally deceived consumers because they knew their representations as to emissions and performance were false.

60.     FCA had a duty to disclose the full scope and extent of the deceptions because:

a.   FCA had exclusive knowledge of the actual emissions in the EcoDiesel Vehicles and concealment thereof;

b.   The details regarding the actual emissions in the EcoDiesel Vehicles and concealment thereof were known and/or accessible only to FCA;

c.   FCA knew Plaintiff and members of the Nationwide Class did not know and could not reasonably discover the actual emissions in the EcoDiesel Vehicles and concealment thereof; and

d.   FCA made general representations about the qualities of the EcoDiesel Vehicles, including statements about their performance, fuel economy, and emissions, which were misleading, deceptive and incomplete without the disclosure of the fact that FCA had designed and installed defeat device software on the EcoDiesel Vehicles that was intended to conceal the vehicles' illegal emission levels from regulators, consumers, and the public.

61.   FCA's misrepresentations and omissions were material in that they affected reasonable consumers' decisions to purchase or lease an EcoDiesel Vehicle. Consumers paid a premium for the EcoDiesel Vehicles precisely because they were advertised to offer low emissions and fuel economy without sacrificing performance.

62.   FCA's silent fraud and its fraud by concealment likewise induced Plaintiff and members of the Nationwide Class to purchase or lease EcoDiesel Vehicles, therefore cause the resulting harm and damage to them.

63.   Plaintiff and members of the Nationwide Class are presumed to have relied upon FCA's misrepresentations and omissions regarding the fuel economy and supposed low emissions of the EcoDiesel Vehicles because those facts are material to a reasonable consumer's purchase or lease of an EcoDiesel Vehicle.

64.   Plaintiff and members of the Nationwide Class have sustained significant damage as a result of FCA's inducements. If Plaintiff and members of the Nationwide Class had known about the AECDs/defeat devices and the unlawfully high NOx emissions at the time of lease or

purchase, they would have not leased or purchased the EcoDiesel Vehicles. FCA is liable to Plaintiff and members of the Nationwide Class in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the Nationwide Class)

65.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

66.    Plaintiff brings this claim on behalf of himself and the Nationwide Class.

67.    FCA has been unjustly enriched in that it intentionally sold the EcoDiesel Vehicles with defeat devices designed to evade the applicable automobile emissions regulations when it could not deliver the combination of low emissions, high performance, and fuel economy that it advertised to consumers.

68.    Plaintiff and members of the Nationwide Class conferred a benefit on FCA by paying a premium to purchase or lease the EcoDiesel Vehicles.

69.    Plaintiff and members of the Nationwide Class reasonably believed that the EcoDiesel Vehicles complied with applicable environmental regulations and, if properly tested in accordance with EPA standards, would meet the advertised fuel economy standards put forward by FCA.

70.    Plaintiff and members of the Nationwide Class received less than what they paid for in that the EcoDiesel Vehicles were not compliant with applicable environmental regulations and failed to deliver the combination of low emissions, high performance, and fuel economy that was promised to consumers.

71.    FCA knows of and appreciates the benefit conferred by Plaintiff and members of the Nationwide Class and has retained that benefit notwithstanding tis knowledge that the benefit is unjust.

72.    The foregoing did not happen by chance, or by conditions outside of FCA's control. The EcoDiesel Vehicles were deliberately deceptively designed only to meet environmental emissions regulations when under particular testing procedures. FCA knew that

under ordinary driving conditions, the EcoDiesel Vehicles would not meet environmental standards.

73.     FCA should therefore be required to disgorge the unjust enrichment.

**FOURTH CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of the Nationwide Class)**

74.     Plaintiff repeats the allegations in the above paragraphs as if fully set forth herein.

75.     Plaintiff brings this claim on behalf himself and the Nationwide Class.

76.     Every purchase or lease of an EcoDiesel Vehicle from an authorized dealer of FCA constitutes a contract between FCA and the purchaser or lessee.  FCA materially breached these contracts by selling or leasing Plaintiff and members of the Nationwide Class defective, non-compliant EcoDiesel Vehicles and by programming EcoDiesel Vehicles to significantly reduce the effectiveness of the NOx reduction systems during real-world driving conditions, rending the EcoDiesel Vehicles substantially less valuable than the vehicles that FCA advertised and promised to deliver to Plaintiff and members of the Nationwide the Class.

77.     FCA's misrepresentations and omissions alleged herein cause Plaintiff and members of the Nationwide Class to enter into their agreements to purchase or lease their EcoDiesel Vehicles. Absent those misrepresentations and omissions, Plaintiff and members of the Nationwide Class would not have purchased or leased their EcoDiesel Vehicles at the prices they paid.  Accordingly, Plaintiff and members of the Nationwide Class overpaid for their EcoDiesel Vehicles and did not receive the benefit of the bargain.

78.     FCA also breached their implied covenant of good faith and fair dealings under the laws of all 50 states and the District of Columbia.  By delivering a vehicle that was non-compliant and by programming EcoDiesel Vehicles to significantly reduce the effectiveness of the NOx reduction systems during real-world driving conditions, FCA violated Plaintiff's and Nationwide Class members' fair and reasonable expectations under their respective contracts.  In addition, FCA's misrepresentations and omissions violated FCA's implied duty to deal honestly, and within reasonable commercial standards of fair dealing, with Plaintiff and other members of the Nationwide Class.

79.    As a direct and proximate result of the FCA's breach, Plaintiff and other members of the Nationwide Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**FIFTH CLAIM FOR RELIEF**
**Breach of Express Warranty, Wis. Stat. §§ 402.313, 411.210**
**(On Behalf of the Wisconsin Subclass)**

80.    Plaintiff incorporates by reference al allegations of the preceding paragraphs as though fully set forth herein.

81.    Plaintiff brings this claim on behalf himself and the Wisconsin Subclass.

82.    FCA is a "merchant" within the meaning Wis. Stat. §§ 402.104(3) and 311.103(1)(t) and a "seller" of motor vehicles under Wis. Stat. § 411.103(1)(d).

83.    FCA is also a "lessor" of motor vehicles under Wis. Stat. § 411.103(1)(p).

84.    The EcoDiesel Vehicles are "goods" under Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

85.    FCA provided an express Federal Emissions Performance Warranty for repairs required for vehicles failing emissions test within the first two years or 24,000 miles (whichever occurs first). Under the warranty, certain major emissions control components are covered for the first eight years or 80,000 miles (whichever occurs first).

86.    FCA provided an express Federal Emission Control System Defect Warranty covering repair of emission control or emission-related parts which fail to function, or function improperly, because of defective material or workmanship. This warranty covers the first two years or 24,000 miles (whichever occurs first), or eight years or 80,000 miles (whichever occurs first) for certain major emissions control components.

87.    FCA provided an express 5-year or 100,000-mile (whichever occurs first) Diesel Powertrain Limited Warranty for every purchased or leased EcoDiesel vehicle. The warranty covers "the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."

88.    FCA's express warranties formed one part of the bargain that was created when Wisconsin Subclass members purchased or leased their EcoDiesel Vehicles.

89.    FCA failed to inform Wisconsin Subclass members that the EcoDiesel Vehicles were intentionally non-compliant with relevant state and federal emission laws, and further failed to correct the defective emission components at FCA's expense.

90.    FCA breached its express warranties that promised repair and/or correction of manufacturing defects or defective workmanship of any parts FCA supplied, and has not offered to repair or correct the defective components of the EcoDiesel Vehicles.

91.    Giving FCA an opportunity to cure the breach of these express warranties would be unnecessary and futile.

92.    Moreover, the Wisconsin Subclass members would not be made whole by the limited remedies or replacement and/or adjustment. Many of the incidental and consequential damages have already been suffered by Wisconsin Subclass members as a result of FCA's fraudulent conduct related to the defective EcoDiesel Vehicles.

93.    Plaintiff and the other members of the Wisconsin Subclass assert, as either an additional or alternative remedy, the revocation of acceptance of the goods and the return of the purchase or lease price of the EcoDiesel Vehicles to both Plaintiff and Wisconsin Subclass members, as well as such other incidental and consequential damages as allowed.

94.    As a direct and proximate result of FCA's breach of its express warranties, Plaintiff and the Wisconsin Subclass members have been damaged in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### Breach of Implied Warranty of Merchantability, Wis. Stat. §§ 402.314, 411.212
### (On Behalf of the Wisconsin Subclass)

95.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

96.    Plaintiff brings this claim on behalf himself and the Wisconsin Subclass.

97.    FCA is a "merchant" within the meaning Wis. Stat. §§ 402.104(3) and 311.103(1)(t) and a "seller" of motor vehicles within the meaning of Wis. Stat. § 411.103(1)(d).

98.    FCA is also a "lessor" of motor vehicles within the meaning of Wis. Stat. § 411.103(1)(p).

99.    The EcoDiesel Vehicles are "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

100.    Wisconsin law under Wis. Stat. §§ 402.314 and 411.212 creates an implied warranty of merchantability for the EcoDiesel Vehicles. This warranty guaranteed that the EcoDiesel Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

101.    The EcoDiesel Vehicles, both currently and when sold and leased, are not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. The EcoDiesel Vehicles are defective in that they are noncompliant with federal and state emission standards due to the undisclosed AECDs that alter and disable vital emissions systems functions.

102.    FCA received notice of these issues within a reasonable amount of time through the EPA and through the many complaints filed by owners and lessees of the EcoDiesel Vehicles.

103.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and other members of the Wisconsin Subclass have been damaged in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18**
**(On Behalf of the Wisconsin Subclass)**

104.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

105.    Plaintiff brings this claim on behalf himself and the Wisconsin Subclass.

106.    FCA is a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

107.    Plaintiff and Wisconsin Subclass members are members of "the public" within the meaning of Wis. Stat. § 100.18(1) who purchased or leased one or more EcoDiesel Vehicles.

108.     The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits a "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1). By fraudulently installing software which made it appear that the EcoDiesel Vehicles were compliant with federal and state emissions regulations, FCA engaged in unfair and deceptive acts and practices in violation of the Wisconsin DTPA.

109.     In the course of its manufacturing process, FCA installed the software that concealed that its EcoDiesel Vehicles were noncompliant with applicable federal emission regulations. FCA engaged in unlawful trade practices by employing deceptive practices, fraud, misrepresentation, suppression and/or omissions of material fact, with the intent that others would rely upon that misrepresentation in connection with the sale of EcoDiesel Vehicles.

110.     FCA has known of the use of the undisclosed AECD defeat device software and the true nature of the EcoDiesel emissions system at least since 2014, but had concealed that information until it was uncovered by the EPA's NOV letter.

111.     FCA compounded its deception by remaining silent regarding its own use of deceptive emissions software in the wake of other highly-publicized diesel emissions scandals, implicating Volkswagen and Audi.

112.     FCA's deceptive acts and practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and Wisconsin Subclass members, regarding the true environmental cleanliness and efficiency of the EcoDiesel Vehicles and the true value of these vehicles.

113.     FCA knowingly and intentionally misrepresented material facts regarding the EcoDiesel Vehicles with the intent to mislead Plaintiff and members of the Wisconsin Subclass.

114.     FCA knew or should have known that its conduct violated the Wisconsin DTPA.

115.     FCA had a duty to disclose the true emissions, performance, efficiency, and reliability information of the EcoDiesel Vehicles, because

        a.     FCA had exclusive knowledge of the actual emissions in the EcoDiesel Vehicles and concealment thereof;

b.     The details regarding the actual emissions in the EcoDiesel Vehicles and concealment thereof were known and/or accessible only to FCA;

c.     FCA knew Plaintiff and Wisconsin Subclass members did not know and could not reasonably discover the actual emissions in the EcoDiesel Vehicles and concealment thereof; and

d.     FCA made general representations about the qualities of the EcoDiesel Vehicles, including statements about their performance, fuel economy, and emissions, which were misleading, deceptive and incomplete without the disclosure of the fact that FCA had designed and installed defeat device software on the EcoDiesel Vehicles that was intended to conceal the vehicles' illegal emission levels from regulators, consumers, and the public.

116.     The EPA's NOV letter revealing FCA's fraudulent concealment of its "defeat device" software and the true cleanliness and performance of its EcoDiesel Vehicles resulted in negative publicity and diminished value of the vehicles. In light of the stigma now attached to the EcoDiesel Vehicles by FCA's conduct, these vehicles are now worth significantly less than they otherwise would be.

117.     Plaintiff and members of the Wisconsin Subclass suffered ascertainable loss caused by FCA's misrepresentation and failure to disclose material information regarding the EcoDiesel Vehicles' emissions and performance.

118.     FCA's unlawful acts and practices complained of herein affect the public interest.

119.     As a direct and proximate result of FCA's violations of the Wisconsin DTPA, Plaintiff and members of the Wisconsin Subclass have suffered injury-in-fact and/or actual damage. Plaintiff and members of the Wisconsin Subclass are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2). Because FCA's conduct was committed knowingly and/or intentionally, Plaintiffs and members of the Wisconsin Subclass are entitled to treble damages.

120.    Plaintiff and the Wisconsin Subclass members also seek court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

## X.    RELIEF REQUESTED

Plaintiff, individually and on behalf of members of the Classes, respectfully request that the Court enter judgement in his favor and against Defendants, as follows:

A.    Certification of the proposed Nationwide Class and Wisconsin Subclass, including appointment of Plaintiff's counsel as Class Counsel;

B.    An order temporarily and permanently enjoining FCA from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    Injunctive relief in the form of a recall or free replacement program;

D.    Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E.    For treble and/or punitive damages as permitted by applicable laws;

F.    An order requiring FCA to pay both pre- and post-judgment interest on any amounts awarded;

G.    An award of costs and attorneys' fees; and

H.    Such other or further relief as may be appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all the issues so triable.

Dated: March 24, 2017                         Respectfully submitted,

                                              **BERMAN DEVALERIO**

                                              By:    *Kristin J. Moody*
                                                     Kristin J. Moody

                                              Todd. A. Seaver
                                              A. Chowning Poppler
                                              44 Montgomery Street, Suite 650
                                              San Francisco, CA 94104
                                              Tel: (415) 433-3200
                                              Fax: (415) 433-6282
                                              Email: tseaver@bermandevalerio.com
                                                     kmoody@bermandevalerio.com
                                                     cpoppler@bermandevalerio.com

1
2
3
4
5
6
7

Daniel E. Gustafson
Daniel C. Hedlund
Joshua J. Rissman
Kaitlyn L. Dennis
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
Email: dgustafson@gustafsongluek.com
        dhedlund@gustafsongluek.com
        jrissman@gustafsongluek.com
        kdennis@gustafsongluek.com

8
9
10
11

Richard M. Hagstrom
**HELLMUTH & JOHNSON PLLC**
8050 West 78th Street
Minneapolis, MN 55439
Tel: (952) 746-2169
Fax: (952) 941-2337
Email: rhagstrom@hjlawfirm.com

12
13

*Counsel for Plaintiff and the Proposed Classes*

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28